Argued June 23, affirmed September 21, petition for rehearing denied October 14, petition for review denied November 30, 1971

# HARRY AND DAVID, *Appellant, v.* WORKMEN'S COMPENSATION BOARD, *Respondent*

488 P2d 829

*William L. Hallmark,* Portland, argued the cause and filed the briefs for appellant.

*Robert B. Kerr,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Plaintiff brought a declaratory judgment proceeding under ORS ch 28 against the Workmen's Compensation Board to determine the validity of a rule promulgated by the Board, and appeals from an adverse determination.

On April 16, 1968, claimant-employe was hired by plaintiff corporation. He was blind in one eye, which was unknown to plaintiff but obviously known to himself. Two days later, in an on-the-job accident, claimant lost the sight in his other eye, thus becoming permanently and totally disabled as defined in ORS 656.206 (1)(a). Plaintiff applied for benefits from the Second Injury Reserve under the second injury program, pursuant to ORS 656.622 and ORS 656.638, as they were in 1968. The benefits were denied because the claim did not qualify under a rule of the Board which provided in pertinent part:

> "A claim can qualify * * * if the following statutory and Board requirements are met.
> "I. To qualify as a preexisting disability, *the law requires that the preexisting disability*
> "A. *Be known*
> "* * * * * *
> "II. To qualify under the *Board requirements*
> "A. *The employer must know of a preexisting disability* at the time of hiring or prior to the second injury.
> "* * * * * *." Workmen's Compensation Board Bulletin No. 48—September 10, 1968.

ORS 656.638 provided:

> "(1) The department [State Accident Insurance Fund] is authorized to set aside and maintain a reserve in the Industrial Accident Fund in the

amount deemed necessary to be known as the Contributing Employers Injury Reserve.

"(2) The department [State Accident Insurance Fund] may reduce, to the extent reasonably justified by the facts, the charge against the experience rating of any contributing employer for any injury resulting in permanent disability or death where the injury is attributable wholly or partially to a preexisting disability of the employe or another employe of the same employer, or where the resultant disability or death is due wholly or partially to a preexisting disability. *As used in this subsection, 'preexisting disability' means any known permanent condition due to previous accident or disease or any congenital condition which is or is likely to be a substantial handicap in obtaining or regaining employment.* The amount of the reduction shall be charged against the Contributing Employers Second Injury Reserve." [Emphasis supplied]

As the emphasized portions of the rule indicate, the Board's requirement (II A) adds something to those on the face of ORS 656.638(2), namely, that the preexisting disability be known *by the employer.* Whether or not this constitutes a valid interpretation of "preexisting disability" pursuant to the rule-making authority vested in the Board[1] ultimately turns on the construction of ORS 656.638(2) and the word "known" as used therein.

The parties are in agreement that "known" as used in the statutory definition of "preexisting disability" is ambiguous, though they differ as to why.[2]

---

[1] Under ORS 656.622(4) the Board has authority to "make such rules as may be required to establish, regulate, manage and disburse the reserve" fund.

[2] Plaintiff asserts "known" means the disability must be one which has obviously manifested itself as opposed to one which is discovered after the second injury. Defendant sees the ambiguity

For our purposes we find sufficient ambiguity to warrant resort to extrinsic matter for assistance in interpretation.

The s t a t u t o r y definition of "preexisting disability" now contained in ORS 656.638(2) became part of Oregon's second injury law when House Bill 1165 was adopted in 1963. Both parties cite the minutes of the Senate committee that considered the bill as support for their interpretation. Although several amendments to change "known" were suggested,[3] none was acted upon. We can only speculate as to the significance of this, and that we will not do.

A more clear indication of what the legislature intended by the inclusion of "known" is the fact that the drafters of House Bill 1165 patterned the definition of "preexisting disability" after one in a similar New York statute. Hearings, House Labor and Industries Committee, April 2, 1963.[4] That statute read in pertinent part:

> "As used in this subdivision 'permanent physical impairment' means any permanent condition * * * which is or is likely to be a hindrance or obstacle to employment." New York Workmen's Compensation Law, § 15 (McKinneys Consol. Laws Ch 67, 1965).

The corresponding language adopted as part of the

---

in the failure to specify to whom and at what time the disability must be known.

[3] One amendment proposed "known" be replaced by "known to the employer at the time of employment," while another suggestion was "known to the employer." Hearings, Senate Labor and Industries Committee, May 2, 1963.

[4] In briefs, the parties agree that the New York statute was the basis for the language which was used.

Oregon second injury law (ORS 656.638(1) and (2) quoted above), when it was enacted in 1963, read:

"(2) * * * As used in this subsection 'pre-existing disability' means any known permanent condition * * * which is or is likely to be a substantial handicap in obtaining or regaining employment * * *."

The committee minutes do not explain why "known" was added to the Oregon definition. However, a very strong argument can be made that it was designed to accord with a judicial construction engrafted on the New York statute in 1951 by *Zyla v. A. D. Juilliard & Co.*, 277 App Div 604, 102 NYS2d 255 (1951). In construing the above-quoted section of the New York statute, the court read into it the requirement of previous employer knowledge despite the absence of "known" on the face of the statute. It reasoned that such a construction was consistent with the purpose of the law:

"* * * Knowledge on the part of the employer, though not necessarily of the employee, is required by the implication of the statutory formula.

"* * * * * *

"* * * The disabilities that come within the definition are not merely those that are permanent, but those that also are or may be likely to hinder employment * * *.

"This necessarily requires an informed decision * * * by a present or prospective employer. The whole purpose of the statute is to encourage the employment of persons known to be physically handicapped." 102 NYS2d at 257-58.[9]

---

[9] The *Zyla* interpretation remains the law in New York. Bellucci v. Tip Top Farms, Inc., 24 NY2d 416, 301 NYS2d 14, 248 NE2d 864 (1969).

Thus, it is fairly apparent that few textual differences exist between our definition and that in the New York statute. More important, though, is the similarity in the purpose for the second injury fund in New York's law and that in Oregon, as is evidenced by the *Zyla* opinion and the minutes of the Senate committee considering House Bill 1165. This is persuasive in our construction of the statute here.

> "* * * When one state borrows a statute from another state, the interpretation of the borrowed statutes by the courts of the earlier enacting state ordinarily is persuasive * * *." State ex rel Western Seed v. Campbell, 250 Or 262, 270-71, 442 P2d 215 (1968), *cert denied* 393 US 1093, 89 S Ct 862, 21 L Ed 2d 784 (1969).

It "either governs the construction to be placed on it in Oregon or is highly persuasive." School Dist. No. 1 v. Rushlight & Co., 232 Or 341, 345, 375 P2d 411 (1962).

Under these circumstances the rule in question was a valid interpretation of the statutory definition of "preexisting disability." Moreover, given its mandate from the legislature to make such rules as may be required to manage the fund, we believe the Board acted in a reasonable manner in filling the gap left by the statute. *Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966); *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961).

Affirmed.