## WARNICK,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION,
*Respondent.*

(EAB No. 80-AB-75, CA 16892)

619 P2d 296

Larry J. Warnick, Lanham, Maryland, filed the brief for petitioner pro se.

James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

THORNTON, J., dissenting opinion.

**BUTTLER, J.**

Claimant appeals from the denial by the Employment Appeals Board of his claim for unemployment compensation benefits for a three-week period, August 25 through September 15, 1979. Denial was based on a finding that claimant did not make an active search for work and was not available for work during those weeks. ORS 657.155.

On appeal claimant contends that (1) the findings of the Board are "erroneous and not supported by the facts in the record," and (2) the decision of the Board is arbitrary "because respondent has not formulated any rules defining the term 'actively seeking work.' " *See* ORS 655.155(1)(c). We affirm.

Claimant is a geographer. He last worked in that capacity for a scientific laboratory associated with Oregon State University (OSU) in Corvallis from October 6, 1977, until June 30, 1979, when his employment terminated for lack of work. Prior to leaving his employment and the state, claimant wrote 35 to 40 letters seeking employment in his field. In July he and his wife moved to the east coast and spent the entire month in transit via automobile. Initially they lived at the home of her parents in New Jersey, where he filed his claim for compensation for the week ending August 25, 1979 (week 34), on September 14, 1979.

On August 21, 1979, claimant and his wife flew back to Oregon to settle their personal affairs. They planned on being in Oregon for that purpose until September 12, and in fact were here for that period. Having moved from Oregon to New Jersey, claimant's "normal labor market area" was New Jersey, his new domicile. During the periods in question, claimant was in Oregon all but three days, and while here he filed for each of the weeks for which he was denied benefits a so-called "courtesy claim." Further, he made a job contact once during each of those weeks: he contacted the Oregon State University Geography Department on August 25 and 28, 1979, and on September 6, he contacted the New England River Basins Commission by telephone. On September 12 they flew back to New Jersey.

■ Claimant contends that the Board's finding that he made only one job search contact during each of the weeks in dispute is not supported by substantial evidence because each of those contacts involved multiple contacts and that he wrote 35-40 letters based on information obtained from them. The record indicates, however, that the letters were written in June, while he was still at OSU, and the reasonable inference is that he obtained the names of prospective employers to whom the letters were sent from the geography department at OSU. There is nothing in the record to indicate that he obtained any additional information on the subsequent contacts he made in August. The same is true with respect to his September 6 telephone contact with the Basins Commission — he had talked with them previously. While he contends here that as a result of that contact, he telephoned numerous project managers (naming them), the record does not support those additional contacts.

There is, therefore, substantial evidence to support the Board's findings with respect to claimant's efforts to seek employment. We need not consider whether the Board's regulation covering "actively seeking work" (OAR 471-30-036) is adequate, because it does not appear that claimant did anything other than re-contact OSU and the Basins Commission, from each of which he had already obtained the information he had already used. Furthermore, ORS 657.155(1)(c) requires that the claimant not only actively seek work, but that he be available for work. Subsection (2) of that section provides:

"An individual who leaves the normal labor market area of the individual for the major portion of any week is presumed to be unavailable for work within the meaning of this section. This presumption may be overcome if the individual establishes to the satisfaction of the assistant director that the individual has conducted a bona fide search for work and has been reasonably accessible to suitable work in the labor market area in which the individual spent the major portion of the week to which the presumption applies."

■ Claimant, while in Oregon, was out of his normal labor market during all of the weeks ending August 25, September 1 and September 8, and for a major portion of

the week ending September 15. He is presumed, therefore, to have been unavailable for work, and although he testified he would have been willing to go anywhere if a prospective employer requested, he did not satisfy the assistant director as required by ORS 657.155(2). We cannot say that the assistant director is compelled, on this record, to be satisfied that claimant has overcome the statutory presumption that he was not available for work.

Affirmed.

**THORNTON, J.,** dissenting.

For reasons which follow, I am compelled to disagree with both the reasoning and the result of the majority opinion.

Plainly, under the rule announced by our Supreme Court in *McPherson v. Employment Division,* 285 Or 541, 591 P2d 1381 (1979), and interpreted by this court in *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979), the case at bar should be reversed and remanded to the Employment Division with instructions to allow the claim for the reason that, notwithstanding the express holdings in *McPherson* and *Oliver,* the Division has never adopted proper rules defining the term "actively seeking work."

In *McPherson* the Supreme Court held, *inter alia,* that terms such as "good cause for leaving employment" are for agency definition by regulation.

In *Oliver* this court specifically said, *inter alia,* that the term "actively seeking work,"[1] which is the key to the case at bar, likewise is for agency definition. 40 Or App at 492.

---

[1]

(1) "An unemployed individual shall be eligible to receive benefits with respect to any week only if the assistant director finds that:

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. No individual participating in a community work and training program, as defined in ORS 411.855, shall, solely by reason thereof, be unavailable for work within the meaning of this section." ORS 657.155(1)(c)

Following *Oliver* the agency responded by amending OAR 471-30-036.[2] A close examination of this regulation, including the amendment, reveals that while it covers

[2]

"471-30-036 (1) In considering suitable work factors under ORS 657.190 and for purposes of determining eligibility under ORS 657.155(1)(c), the Administrator may require an individual to actively seek the type of work the individual is most capable of performing due to prior job experience and training except that:

"(a) If an individual is unable to secure his customary type of work after contacting the potential employers in the labor market where benefits are being claimed, the Administrator may require the individual to seek less desirable but similar work or work of another type which the individual is capable of performing by virtue of experience and training.

"(b) If the type of work an individual is most capable of performing does not exist in the labor market where the individual is claiming benefits, the Administrator may require the individual to seek any work that exists in the labor market for which the individual is suited by virtue of experience and training.

"(c) After the individual has contacted the potential employers in the market where benefits are being claimed and is still unable to obtain work as described in (a) and (b) of this section, the Administrator may require the individual to further expand his work-seeking activities.

"(2) For the purposes of ORS 657.155(1)(c), an individual shall be considered able to work only if he is physically and mentally capable of performing work during all of the customary workweek for the type of work being sought pursuant to the provisions of section (1) of this rule. However, an occasional and temporary disability for less than half the customary workweek shall not result in a finding that the individual is unable to work for the week.

"(3) For the purposes of determining whether or not an individual is available for work under the provisions of ORS 657.155(1)(c), the Administrator shall require at a minimum:

"(a) That the individual be willing to work full time during all of the usual hours and days of the week customary for the work he is seeking pursuant to section (1) of this rule.

"(b) That the individual be reasonably accessible to any suitable work opportunities within the labor market in which he is seeking work pursuant to section (1) of this rule, including any temporary work opportunities that are otherwise suitable unless such temporary work will bar or interfere with his return to his regular employment.

"(c) That the individual has not imposed conditions which substantially reduce his labor market attachment.

"(4) An individual's labor market shall be that geographic area surrounding his permanent residence within which employers customary obtain employes performing similar work or services as those provided by the claimant and within which employes generally under similar circumstances are willing to commute to seek and accept the same type of work at a comprable wage.

such subjects as what is suitable work, what the Administrator may require the unemployed person to do in seeking work, availability for work, geographic areas, etc., it does not provide any guidelines for determining what constitutes "actively seeking work." Under subsection (1) of this regulation, an individual is required to seek, at least initially, "the type of work the individual is most capable of performing due to prior job experience and training * * *." The manner in which a job search is undertaken varies greatly with the type of job and the size of the market for particular services. Professionals, like claimant, whose most recent job experience was in "remote sensing satellite imagery air photo interpretation," necessarily approach the search for employment differently than would sheet metal workers. The regulation in question fails to provide any guidelines which would alert a claimant as to what is expected of him in seeking work.

Even ignoring, *arguendo,* that the regulation in issue is legally insufficient, my review of the evidence persuades me that the majority is in error in its evaluation of the evidence. It seems to me that claimant did make a more than sufficient search for work during the period in question. Thus, the conclusion of the agency and the Board in my view is not supported by substantial evidence in any event. A professional person such as claimant who is in a highly specialized field, who makes contacts at the Geography Department at Oregon State University and at the New England River Basins Commission by telephone (claimant testified that all were multiple contacts), is "actively seeking work." In addition, it is undisputed that during this period he had 35 to 40 "feeler" letters to prospective employers outstanding, augmenting his job search.

---

The geographic area shall be defined by local employes of the Employment Division, based on criteria set forth in this section.

"(5) Nothing in this rule shall prohibit the claimant from seeking work in other labor market areas in this or any other state. The geographic area shall be defined by local office employes of that State Employment Security Agency, based on the criteria outlined in section (4) of this rule as though the claimant maintained a permanent residence in that labor market."

The majority would apparently hold that a person such as claimant who mailed a hundred letters to prospective employers one week would not be "actively seeking employment" the following week if he merely awaited a response to those letters. The preposterousness of such a conclusion points up the need for agency elaboration of the standard.

Contrary to the majority opinion, a conclusion on this evidence by both the agency and the Board that claimant was not actively seeking work is, I submit, not supported by the record.

Finally, the majority opinion introduces an entirely new and additional ground for denying the instant claim, presumably to bolster its decision, namely, that claimant was "not available for work" during the period. ORS 657.155(2). To begin with, this issue is not before us. Neither the agency nor the Board rested its decision on this ground. Second, this is an issue for agency determination in the first instance, rather than this court. *McPherson v. Employment Division, supra.* This is not a fact-finding court. *Fadeley v. Oregon Ethics Comm.,* 25 Or App 867, 870 n 2, 551 P2d 496 (1976). Further, it is a fundamental principle of administrative law that on judicial review of administrative action, the court does not consider questions not presented and considered by the agency or its board of review. As we held in *Saxon v. Div. of State Lands,* 31 Or App 511, 570 P2d 1197 (1977), an appellate court assumes the function of an administrative agency when it presumes to act upon a ground not previously presented. *Accord: D & M Products v. Workmen's Comp. Bd.,* 30 Or App 707, 567 P2d 1066, *rev den* (1977).

In summary, the majority opinion is contrary to the express holdings of *McPherson* and *Oliver* on at least two counts; further, it attempts to introduce a new ground for denying the claim which was not previously considered.

I would reverse and remand with instructions.